■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. ANGELO SPARACO, Respondent.— Appeal by the People from an order of the Supreme Court, Kings County, entered November 22, 1971, granting defendant's motion to dismiss the indictment, which charges him with criminal contempt (Penal Law, § 215.50, former subd. 4). Order reversed, on the law, motion denied, and indictment reinstated. In our opinion, the Assistant District Attorney's statements in this case, considered reasonably and in context, adequately assured defendant that he had been granted the immunity provided for by section 619-c of the Code of Criminal Procedure (*People* v. *Mulligan*, 29 N Y 2d 20; *People* v. *Dellacroce*, 38 A D 2d 210). We note that defendant was told, *inter alia*, that "any questions you answer, you cannot be convicted of a crime." This is an immunity even broader than that to which he was entitled. Further, the prosecutor made specific reference to section 619-c. To do otherwise than to deny the motion and reinstate the indictment would ignore the realities of the situation and the post-*Masiello* decision of the Court of Appeals in *People* v. *Mulligan* (29 N Y 2d 20, *supra*). We also note that the prosecutor indicated to defendant that the only exceptions to the grant of immunity were perjury and contempt (see *People* v. *Dellacroce, supra*). We find no merit to defendant's contention that the appeal is untimely (see Code Crim. Pro., §§ 518, 521 [now CPL 450.20, subd. 1; CPL 460.10, subd. 1]). Latham, Acting P. J., Christ and Brennan, JJ., concur; Shapiro and Gulotta, JJ., dissent and vote to affirm, with the following separate memoranda: Shapiro, J. The narrow issue here is whether defendant, after refusing to testify before a Grand Jury, was properly informed that the immunity conferred upon him was full transactional immunity as distinguished from testimonial immunity. While there is no magic litany or formula requisite to compliance with the Constitution, the question always is whether the defendant was apprised that he would be protected from prosecution for any and all crimes which might be revealed by his testimony or to which his testimony might relate (see *People* v. *Mulligan*, 29 N Y 2d 20). In *People* v. *Masiello*

(28 N Y 2d 287, 289), the defendant was advised, "'If you are asked any questions and you are directed to give answers by the Grand Jury, any such answers — any evidence obtained or the answers themselves can not be used against you for prosecution'". Such advice was held inadequate, as it did not inform the defendant that he could not be prosecuted for any transaction about which he was questioned. He was merely advised that the answers themselves could not be used against him. In *Mulligan* (*supra*, pp. 25–26), advice that "'You can no longer incriminate yourself'", that "'Your answer to the question will in no way incriminate you because you have been receiving immunity'", and that "'you will be getting *immunity from prosecution for whatever crimes your testimony may disclose*'" (italics in original) was held to have been as broad as the constitutional privilege against self incrimination which it replaced. Hence, it was held that Mulligan's refusal to testify subjected him to prosecution for contempt. In *People* v. *Tramunti* (29 N Y 2d 28, 29), which was decided on the same day as *Mulligan*, advice to the defendant that "'you cannot, sir, be prosecuted for any crime that you may be forced to testify against yourself relating to it, in other words  *  *  * if you were to testify and incriminate [your]self  *  *  * you cannot be prosecuted for that' or for any evidence 'that we are able to obtain from your lips as a result of anything you testified to which may inferentially lead to your having violated something'" was held to have fallen far short of the "'full and fair notice', to which a witness is entitled, that he was being given transactional immunity, 'immunity in displacement of the privilege against self-incrimination.'" Instead, this advice, the court noted, was almost unintelligible. In *People* v. *Dellacroce* (38 A D 2d 210, 213), the defendant was first advised that "'Any matter, thing, evidence or transaction that you testify to before this Grand Jury  *  *  * cannot be used against you in any future criminal proceeding if your answer is honest and relevant to the question posed to you and in your answer you admit to a crime you can never be prosecuted for that crime.'" We noted that such advice was defective in that it indicated that immunity was being conferred only as to answers. This advice was also defective in that it limited immunity to honest and relevant answers. While a dishonest answer given after a grant of immunity might not bar a prosecution for perjury, the dishonesty would not serve to vitiate the immunity. We held, however, that any misunderstanding as to the nature of the immunity conferred was cleared up by the clear and unequivocal advice next given, that is: "*There are only two exceptions to this rule after you have been granted immunity. You can be cited for contempt, refusing to answer a question relative to the investigation or if you answer falsely, in other words, if you answer a question dishonestly or untruthfully you can be indicted for perjury. Those are the only two exceptions, the two crimes that you can be convicted of after Grand Jury immunity. Do you understand that?*'" (p. 213; italics for second sentence supplied; all other italics in original). This advice completely negated the possibility that the defendant, by any stretch of the imagination, could believe that he was subject to be prosecuted for any crime to which his testimony might relate, save for the statutory exceptions of perjury or contempt for failure to answer. Hence, while the statutory language was not utilized, we held that the defendant had been sufficiently advised that he had been given transactional immunity. Let us now examine what defendant was told in this case. He was advised of the effect of a grant of immunity six times. The first four occasions preceded the actual grant of immunity and the next two followed the grant. He was first advised that such a grant would mean that "any evidence you

testify to before this Grand Jury and you admit to a crime and your answer was honest and relevant to this Grand Jury, you can never be prosecuted for that crime." This advice was clearly erroneous, as it limited the immunity to honest and relevant answers. Hence, its description was of an immunity even less far-reaching than testimonial immunity. The second explanation given defendant suffered from the same defect as the first. It again limited immunity to prosecution for crimes admitted to in honest and relevant answers. On the third occasion, defendant was advised: " If you refuse to answer a question, you can be held in contempt, after being granted immunity or if you answer falsely to the question, you can be indicted for perjury. Those are the two — only two exceptions." The next piece of advice the Assistant District Attorney gave defendant was: "your testimony — you will be protected by being granted immunity. Any questions you answer, you cannot be convicted of a crime." Standing alone these two bits of advice might arguably have been sufficient, since they come close to the explanation given in *Dellacroce (supra)*, where the defendant was informed that after the grant of immunity he could only be convicted of the crimes of perjury or contempt. However, the Assistant District Attorney was not content to let the matter rest there, for he at once diluted the effect of what he had said by adding: " Mr. Sparaco, I'm going to explain to you what immunity means. It takes the place of the Fifth Amendment; by surrending [*sic*] your Fifth Amendment privilege and receiving immunity, anything you testify to, *if your answer is honest and relevant to the question asked, you admit to a ꞌcrime in your answer, you can never be prosecuted for that crime. Do you understand that, sir?*" (italics supplied). This advice reverted to the Assistant District Attorney's original explanation and once again limited the grant of immunity to crimes admitted *in honest and relevant answers*. Finally, defendant was told, "Any evidence you give before this Grand Jury cannot be used against you at all. You cannot be prosecuted if it leads to a crime." Even were this last piece of advice regarded as valid, it was too late to correct the damage which had already been worked. Fundamental fairness requires that a witness be clearly advised that he has received immunity in displacement of the privilege against self incrimination. This requirement is not met if the witness is given a potpourri of advice with regard to the scope of the immunity, some of which is accurate and others inaccurate. The burden may not be placed on the defendant to separate the good from the bad. In this case the prosecutor, in his desire to elicit honest and relevant answers, constantly misadvised defendant as to the nature and scope of the immunity. The net effect was that the advice given was confused and contradictory. It therefore follows that defendant's refusal to answer questions cannot be relied upon to support a charge of contempt (see, e.g., *People* v. *Tramunti,* 29 N Y 2d 28, *supra*). I therefore vote to affirm the order dismissing the indictment. In view of the numerous cases on this subject coming to this court and the ease with which the question could be obviated by a single reading of the statute to the witness, I cannot understand why that course is not pursued. Gulotta, J. This appeal brings up for review the question of whether defendant was sufficiently and properly advised of a grant of transactional immunity and whether he in fact received the full protection to which he was entitled, pursuant to section 619-c of the Code of Criminal Procedure, when he appeared before the Grand Jury as a witness. More accurately speaking, we are not concerned with the *fact* of immunity, since unquestionably that was adequately conferred by the Grand Jury's decision to grant it. Rather we are concerned on this appeal exclusively with the first question, i.e., whether

defendant was properly advised of the Grand Jury action, as case law requires. The concept is a fairly simple one. As Judge Breitel put it in his dissenting opinion in *People* v. *Mulligan* (29 N Y 2d 20, 25), the "granting authority must unequivocally advise the witness that 'he may not be prosecuted criminally concerning any transaction about which he might be questioned' (28 N Y 2d, at p. 291)." Yet prosecutors seem to encounter great difficulty in expressing this idea when, in a sincere effort to make it plainer still, they interpolate their own ideas. This often results in unintelligible, incomprehensible and confusing language. To illustrate, in *People* v. *Tramunti* (29 N Y 2d 28, 29), the prosecutor said, " 'You cannot, sir, be prosecuted for any crime that you may be forced to testify against yourself relating to it, in other words * * * if you were to testify and incriminate [your]self * * * you cannot be prosecuted for that' or for any evidence 'that we are able to obtain from your lips as a result of anything you testified to which may inferentially lead to your having violated something.' " There is also a tendency to confuse essentially dissimilar things. For example, the witness is often told that his answers must be "honest and relevant" in order to gain immunity, or that he must implicate himself by his answer to obtain the privilege. In fact, none of these conditions has any bearing on gaining the immunity one is promised, or is entitled to, to wit: transactional immunity with respect to the matter about which he is being questioned. Actually, it is the *question* which determines the transaction and not the answer; so one could not, for instance, gain immunity for an unasked-about crime, simply by blurting out an answer that was unresponsive to any question he was asked. The immunity is born of the question; a possible penalty flows from the answer. Neither has he immunity from a prosecution for perjury committed during the examination or for contempt for an evasive answer or for a refusal to give any answer. However, these are not exceptions to the immunity granted; they are completely foreign to it. To point up the difference — one would have immunity for a prior perjury about which he was being questioned, but not for a present perjury committed by the answer. Nor is it necessary that a defendant's answers be inculpatory. He has immunity for the transaction whether they are or not. While it is true that he has immunity for his testimony or for what crimes it might lead to, that is not the whole truth. Such statements made to a witness, especially a layman, whose lawyer is outside the Grand Jury room and to whom he must try to relate what took place second-hand to secure advice, are not "full and fair notice" to the witness. The grant of immunity should be clear, unequivocal and understandable, stated in simple language so that he comprehends that the scope of the protection extends to both testimonial and transactional immunity. In this case the immunity conferred was not as broad as the privilege against self incrimination which it was intended to displace. The grant was limited and conditional and the statements by the prosecutor were equivocal and confusing. The instructions to defendant consumed six pages of the printed record and on different occasions gave varying explanations of the immunity conferred. To illustrate, at one point the prosecutor said: "Mr. Sparaco at this time, I'm going to request that the Grand Jury grant you immunity, which means that your testimony — you will be protected by being granted immunity. Any questions you answer, you cannot be convicted of a crime. I'm going to — the Code of Criminal Procedure of the State of New York, Sections 619C and 619D. You're temporarily excused." This is hardly understandable. The next statement made to him after he was recalled was as follows: "Mr. Sparaco, I'm going to explain to you what immunity means. It takes the place of the

Fifth Amendment; by surrending [*sic*] your Fifth Amendment privilege and receiving immunity, *anything you testify to, if your answer is honest and relevant to the question asked, you admit to a crime in your answer,* you can never be prosecuted for that crime. Do you understand that sir? " (italics mine). This statement has three defects; first, it speaks only of testimonial immunity; secondly, it makes the grant conditional upon his answer being "honest and relevant"; thirdly, the immunity extends only if he admits to a crime and then only to any crime he admits to in his answer. Other statements made to defendant have this same thread of limitations and confusion running through them, but these two illustrations serve to point out the vices I have been discussing. Under the rules annunciated by the Court of Appeals in *People* v. *Masiello* (28 N Y 2d 287), these instructions so circumscribed the simple comprehensive immunity conferred by statute as to make it an incomplete substitute for the constitutional privilege against self incrimination (*Counselman* v. *Hitchcock,* 142 U. S. 547). The statute is broad and explicit enough, but the explanation was not.